UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ALEXANDER CONSTANTINE, on behalf
of himself and those similarly situated,

                    Plaintiff,                          Case No. 3:24-cv-02925

        v.

AAA COOPER TRANSPORTATION, an
Alabama Corporation,

                    Defendant.

## AMENDED[1] BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR FLSA CERTIFICATION AND NOTICE TO PUTATIVE CLASS MEMBERS

Plaintiff, Alexander Constantine, on on his own behalf and on behalf of those

similarly situated (hereinafter "Plaintiff and the Putative Class Members"), files this

Motion for FLSA Certification and Notice to Putative Collective Members ("Motion")

pursuant to 29 U.S.C. § 216(b). For the reasons set forth in Plaintiff's Motion and

other evidence before this Court, Plaintiff respectfully requests that the Court enter

an Order certifying a collective action for "**All Hostlers employed by Defendant

in the state of Texas at any time from September 24, 2022 to present, who

were classified as exempt under the FLSA under the Motor Carrier**

---

[1] Plaintiff files this Amended Brief simply to amend the below signature block. Defendant's Response to Plaintiff's Motion to Certify FLSA Collective Action and Issue Notice claims Plaintiff did not follow this Court's previous instruction regarding local counsel signing each filing. *See* D.E. 32, p. 11. While Plaintiff disagrees that his original Brief did not comply, as Mr. McCarley's name and signature block was clearly on the signature block of the original Brief, Plaintiff files this Amended Brief out of an abundance of caution. This Brief has not changed since the original filed on September 24, 2025. *See* D.E. 31.

1

**Exemption**." Plaintiff further requests that this Court enter an Order requiring Defendant to produce contact information for all Putative Collective Members and authorize the issuance of the Proposed Notice and Consent to Join Form, attached as Exhibit 1 here, to all members of the putative Collective in the method and manner described herein. In support of Plaintiff's Motion, Plaintiff states as follows:

## SUMMARY OF THE ARGUMENT

In deciding whether to certify this collective action, the central question for the Court is "whether merits questions can be answered collectively." *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430, 442 (5th Cir. 2021). The answer to that question here is, emphatically, yes—they can.

In support of this Motion, Plaintiff has presented substantial evidence that Plaintiff and the Putative Collective Members were all employed as "Hostlers" for Defendant in Texas who were uniformly classified as exempt under the same FLSA exemption (the Motor Carrier Exemption, 29 U.S.C. §213(b)), and who were not paid complete time and one-half of their regular rate for all overtime hours worked. The evidence demonstrates that: (1) all Hostlers in Texas were uniformly paid by the hour; (2) all Hostlers in Texas performed similar job duties; (3) all Hostlers in Texas were subject to Defendant's policy of paying "straight time" for overtime hours worked until the end of 2023, after which point, all Hostlers in Texas were paid "straight time" for hours 40 to 50[2] and time and half for all hours over 50 in a workweek; and that (5) all Hostlers in Texas were uniformly classified as "exempt" under the Motor

---

[2] Beginning in January 2024, Defendant started paying time and one-half compensation to Hostlers for hours worked above 50 in a week.

Carrier exemption of the FLSA. Each of these unassailable facts are confirmed by the testimony of Defendant's own Rule 30(b)(6) corporate representative in his deposition. As such, the question of whether Defendant's uniform policy violates the FLSA can easily be answered collectively, making this case suitable for collective action treatment.

The issue presented here is far from a matter of first impression. Other courts have repeatedly certified similar FLSA collectives involving similar job positions and claims at issue here, where the defendant asserted the hostlers were exempt under the Motor Carrier Exemption. These cases include post-*Swales* decisions in this Circuit, further supporting Plaintiff's request for notice and conditional certification here. Consistent with these decisions, Plaintiff respectfully submits certification is likewise appropriate here.

## **FACTUAL BACKGROUND AND PROCEDURAL SUMMARY**

1. Procedural History.

On November 21, 2024, Plaintiff filed his Complaint pursuant to 29 U.S.C. § 216(b). [D.E. 1]. Defendant filed its Answer on January 13, 2025. [D.E. Nos. 14]. In their Answer, Defendant blanketly asserted the Motor Carrier Exemption as a defense to the claims of Plaintiff and "the other purported similarly situated employees." *Id.*, at p. 9 (Twentieth Affirmative Defense). After an initial Scheduling Order was issued by this Court [D.E. 20], the Parties agreed to mediation and requested an extension of the original schedule. [D.E. 23 and 26]. The Court granted the request on April 17, 2025, extending the deadline for Plaintiff to file the current

motion to September 24, 2025. [D.E. 27]. The Parties attended mediation on May 7, 2025, but were unable to resolve this matter. [D.E. 28]. Thereafter, the Parties completed limited discovery focused on the "similarly situated" issue. Plaintiff now moves this Court to authorize notice and conditionally certify this collective action under *Swales* so that Hostlers in Texas receive notice of their rights to join this action.[3]

    2. <u>AAA Cooper Transportation.</u>

Defendant, AAA Cooper Transportation ("Defendant" or "AAA"), is a "multi-regional transportation solutions provider offering less-than-truckload, dedicated contract carriage, truckload brokerage, fleet maintenance, and international service" …"across a substantial area of the United States." *See* Defendant's website at https://www.aaacooper.com/About. Included in these services are hostling services which are performed by Hostlers.

Hostlers are responsible for moving trailers to and from door docks to various spaces on the yard within a facility. *See* Deposition Excerpts of Steven Aronhalt, Defendants Rule 30(b)(6) corporate representative, p. 20, l. 20 – p. 21, l. 1, attached as Exhibit 2 (hereinafter "Aronhalt Depo.").[4] Defendant employs Hostlers in Texas

---

[3] Plaintiff's Complaint originally sought to include all Hostlers companywide based on the uniform classification of Hostlers as exempt but has proactively limited this action and the request for notice here to Hostlers who worked in Texas, based on Defendant's asserted defense to a company-wide collective action pursuant to *Bristol-Myers Squibb*. While Plaintiff and his counsel disagree with Defendant's position, Plaintiff has chosen to limit this action to just Texas Hostlers to avoid such a dispute before the Court.

[4] Specifically, Defendant's Corporate Representative testified:

at both the Dallas (Grand Prairie) facility and the Houston facility. Aronhalt Depo., p. 16, l. 12-21.  In total, Defendant employed eighty-four (84) Hostlers in Texas. *See* Defendant's Supplemental Responses to Plaintiff's First Set of Interrogatories, Response No. 5, attached hereto as Exhibit 3.

    3.  <u>Defendant's Texas Hostlers are Similarly Situated.</u>

Defendant utilizes a single uniform job description and job posting for its Hostler position. *See* Job Description attached as Exhibit 4; and Job Postings attached as Exhibit 5.  Defendant's Corporate Representative confirmed that the duties performed by all Hostlers in Houston and Dallas are "basically the same" and that all Hostlers use the same YMS (yard management system) in both the Houston and Dallas locations, which shows the work assigned to and completed by Hostlers. Aronhalt Depo., p. 26, l. 21 – p. 28, l. 22.  Hostlers all go through the same training as well. *Id.*, p. 44, l. 12 – p. 45, l. 6. Hostlers primarily assist in moving trailers from the yard to doors for loading/unloading, and are interchangeably referred to as "hostlers," "spotters," "mule drivers," and "yard workers".  *See* Deposition Excerpts of Alexander Constantine, p. 52, l. 10-21, attached as Exhibit 6 (hereinafter "Constantine Depo."). Both the Dallas and Houston locations are self-contained sites, such that Hostlers do not have to leave the yard to perform their hostling duties and do not drive on public highways.  Aronhalt Depo., p. 23, l. 13 – p. 25, l. 7.

Defendant pays all its Hostlers by the hour.  Aronhalt Depo., p. 28, l. 23 – p.

---

Q. Just again, very big picture for the record, what is -- what is hostling mean?

A. Hostling is part of the freight handler group, and it includes movement of the trailers from and to the dock, or within the yard environment at a location.

29, l. 3.  Prior to 2024, Defendant paid its Hostlers, including Plaintiff, their regular hourly rate, i.e. "straight time," for all hours worked, including overtime hours worked each workweek.  *Id.,* p. 70, l. 2 – 10.  Pay records confirm this practice. *See* Example Constantine paystub attached as Exhibit 7. In 2024, Defendant changed its pay practices for all Hostlers (companywide, not just in Texas) and began paying time and one-half of their hourly rates for hours above 50 in a week, even as it continued to pay "straight time" for hours 40-50 worked in a week. Aronhalt Depo., p. 70, l. 11 - 22.  Again, Defendant's pay records confirm this uniform pay practice. *See* Example Constantine paystub attached as Exhibit 8. Defendant has always classified its Hostlers[5] as exempt under the FLSA pursuant to the Motor Carrier Exemption. Aronhalt Depo., p. 78, l. 9-22; Document labeled ACT 561 attached as Exhibit 9 (describing January 2024 pay changes and explaining that the Motor Carrier Exemption applies). Thus, it cannot be disputed that Hostlers are subject to a uniform policy and practice whereby Defendant classifies them as exempt and fails to pay time and a half for all overtime hours worked.

4.  <u>Defendant's Anticipated Argument That All Hostlers are Also Dockworkers is Irrelevant in the Context of This Motion and/or Further Supports Certification.</u>

Plaintiff anticipates that Defendant will argue that Hostlers in Texas also perform work as a dockworker, such as loading freight onto a trailer, in an effort to

---

[5] Defendant included its Hostlers within the "freight handler group," which includes Hostlers, dockworkers, line haul drivers and P&D (pickup and delivery) drivers. Aronhalt Depo., p. 44, l. 12-20.  Defendant uniformly classifies all employees in its "freight handler group" as motor carrier exempt. Aronhalt Depo., p. 34, l. 11 – p. 36, l. 15.

bolster its argument that Hostlers are exempt under the Motor Carrier Exemption.[6] This argument is a red-herring and not germane to the issue of whether notice should be sent to Hostlers in Texas. Moreover, any argument that all Hostlers are supposedly "cross-trained" and could be called up to perform dockworkers duties further confirms that all Hostlers share similar duties.

It is undisputed that Defendant has specific employees classified as dockworkers, whom it codes under a different job code, whose primary duty is to work on the dock and perform such loading and unloading duties. *See* Example Dockworker paystub with job code of Dockworker and distinct Dockworker job posting, attached as Exhibits 9 and 10. The fact that some Hostlers, but not all, may

---

[6] While consideration of the merits is premature at this juncture, the law is clear that hostling duties where spotting is done on private property would not fall within the Motor Carrier Exemption. The Department of Labor Field Operations Handbook ("FOH"), states in relevant part:

**24b00 Spotting trucks, tractors, trailers.**
…If such spotting of equipment takes place entirely on the premises of a terminal or other private property, however, DOT would have no jurisdiction since it would not be transportation over the public highways.

…

**24d01 Off-highway transportation.**
Drivers engaged in transportation solely on private property do not come within the section 13(b)(1) exemption since such transportation is not over the public highways. The fact that a state line or a public highway is crossed during the course of such transportation would not change this conclusion.

*See* FOH Chapter 24, available at *https://www.dol.gov/agencies/whd/field-operationshandbook/Chapter-24*. Hence, Defendant's attempts to conflate Hostlers with separate dockworkers who primarily perform loading duties.

have performed *some* dock work in the past[7] does not undermine Defendant's uniform classification of Hostlers or that this Court can ultimately determine collectively whether Hostlers are properly deemed exempt or non-exempt under the Motor Carrier Exemption.

After this lawsuit was filed, it is also undisputed that Defendant held meetings in March 2025 where Hostlers were told that, going forward, they would be required to perform a minimal amount of dockwork in addition to their primary duty of hostling. *See* Constantine Depo., p. 29, l. 20 – p. 33, l. 3 (describing March 2025 meeting as a distinct change to Hostler job duties), and Aronhalt Depo., p. 82, l. 8-22 (confirming such meetings occurred). From that point forward, pay records for Hostlers like Plaintiff here started to record small amounts of "dockworker" time on their paystubs. *See* Constantine example paystub attached as Exhibit 12. This dockwork reconstitutes a minuscule portion of Hostlers duties, but the common issue of whether such work after March 2025 meets the de minimus standard codified in the applicable regulation, again, is common to all Texas Hostlers. In other words, Defendant's newly-minted requirement that all Hostlers perform minimal dockwork further *supports* certification and notice, because it constitutes further evidence that Defendant treats *all* Hostlers the same.[8]

---

[7] *See* Constantine Depo., p. 95, l. 6 – p. 98, l. 24 (explaining that for a few months early in his employment that Defendants had him work *exclusively* on the dock for a few months before he transitioned back to performing only hostling duties).

[8] During the merits phase of this case, if Defendant argues Hostlers are exempt because of these duties changes in March 2025, the Court can easily decide such an exemption on behalf of the collective for both pre-March 2025 and post-March 2025.

5. Defendant's Hostlers are Similarly Situated.

There is no dispute of the core facts surrounding the Hostlers' job duties, pay and Defendant's classification of Hostlers. The dispute is only whether this group of employees are exempt under the Motor Carrier Exemption.[9] It is undisputed that ***all*** Hostlers are paid by the hour; ***all*** were paid "straight time" for overtime for all overtime hours worked up to January 2024; that since January 2024 ***all*** Hostlers were paid "straight time" for hours 40-50 in a workweek; that ***all*** Hostlers have "basically the same" job duties; that ***all*** Hostlers work at facilities where the driving duties all occurred in a self-contained yard and not on public roadways, and that ***all*** Hostlers were at all times uniformly classified as exempt under the Motor Carrier Exemption. The only question for the Court at this time is whether the determination of Hostlers as exempt under the Motor Carrier Exemption can be answered on a collective basis. As demonstrated above and below, the answer is a resounding **YES**.

## MEMORANDUM OF LAW

### A. *Swales* **Requires Courts to Consider Whether Merits Questions Can Be Answered Collectively Without Endorsing the Merits**

_____

[9] While the merits are not at issue, several courts have previously held that hostlers/spotters are non-exempt under the FLSA. *See, e.g., Billingslea v. Southern Freight, Inc.*, 2010 WL 1233385 (N.D. Ga. March 29, 2010) (denying employer's motion for summary judgment that "yard hostler" was motor carrier exempt because the evidence showed the yard hostler only drove a "hostler tractor that he could not, and did not, take on to any public roads or interstate highways."); *Buscarino v. TQ Logistics, Inc.*, 2010 WL 3211708 (D.S.C. August 11, 2010) (holding the motor carrier exemption inapplicable to spotters where evidence showed activities transpired behind gates and "not on thoroughfares open to and accessible by the public."); *Harrison v. Lazer Spot, Inc.*, 2021 WL 5906108 (M.D. Pa. December 14, 2021) (denying summary judgment for yard jockey where record indicated that the yard jockey "rarely, if ever, drove goods interstate or intrastate as part of his employment duties."); and *Bethel v. Lazer Spot, Inc.*, 2022 WL 1683738 (N.D. Ga. March 28, 2022) (denying motor carrier exemption applies for same reasons).

In *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021), the Fifth Circuit rejected the *Lusardi* two-step approach to FLSA collective certification, and instead, held that district courts "must rigorously scrutinize the realm of 'similarly situated' workers" from the outset of the case while considering "(1) the FLSA's text, specifically § 216(b), which declares (but does not define) that only those 'similarly situated' may proceed as a collective; and (2) the Supreme Court's admonition that while a district court 'may facilitate notice to potential plaintiffs' for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation." *Id.* at 434. Through this holding, the court created a single "collective treatment" determination, faithful to the original language of § 216, requiring only that workers be "similarly situated" and cautious of stirring up litigation. *Id.* at 434.

*Swales* directs courts to "ascertain[] the contours of the action at the outset," *id.* at 435, and "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id.* at 441. "The bottom line is that the district court has broad, litigation-management discretion [...] that [...] is cabined by the FLSA's 'similarly situated' requirement and the Supreme Court's decision in *Hoffmann La-Roche*." *Id.* at 443

The central question for the Court is "whether merits questions can be answered collectively." *Id.* at 442. In this regard, *the Court's goal is unchanged*. Courts have long recognized "the relevant inquiry is whether there is a demonstrated similarity among the individual situations some factual nexus which binds the named

10

plaintiffs and the potential Collective members together as victims of a particular alleged policy or practice, so that hearing the cases together furthers the purposes of Section 16, is fair to both parties, and does not result in an unmanageable trial." *Vanzzini v. Action Meat Distributors, Inc.*, 995 F. Supp. 2d 703, 720 (S.D. Tex. 2014) (cleaned up, citing *Crain v. Helmerich & Payne Int'l Drilling Co.*, 1992 WL 91946, at *2 (E.D. La. Apr. 16, 1992)). "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018); *see also Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 521 (2d Cir. 2020) (analyzing whether plaintiffs "share one or more similar questions of law or fact material to the disposition of their FLSA claims," and finding if they are "similar in some respects material to the disposition of their claims, collective treatment may be to that extent appropriate, as it may to that extent facilitate the collective litigation of collective plaintiffs' claims").

To that end, *Swales* further holds that when "plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job . . . a district court will not likely need mountains of discovery to decide whether notice is appropriate." *Id.* at 441-42. In these instances, "notice might be justified when the pleadings and only preliminary discovery shows sufficient similarity between the plaintiffs' employment situation." *Id.* at 441.

Here, Plaintiff's proposed Collective involves just *one* category of employees—Hostlers—who worked at only two locations in Texas.  All Hostlers performed the

same general job duties, utilized the same Yard Management System which assigned them duties, and performed their jobs in the same way. Defendant also uniformly paid its Hostlers by the hour and used the same pay practices described above in not paying complete time and one-half overtime compensation for all overtime hours worked both before and after January 2024. Defendant also uniformly classified all Hostlers as exempt under the same Motor Carrier Exemption, which Plaintiff now challenges. Accordingly, under *Swales*, this Court does not need a "mountain of evidence" to decide whether notice is appropriate. The Parties have conducted limited *Swales* discovery, and the discovery to date (described above and attached hereto) entirely supports certification here and notice being sent to Hostlers in Texas.

## B.   <u>Plaintiff and the Texas Hostlers are Victims of a Common Policy.</u>

The threshold inquiry for collective treatment is whether the proposed Collective is "similarly situated." *See* 29 U.S.C. § 216(b). Plaintiffs are "similarly situated" if they raise claims capable of "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged" misconduct. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "[P]utative class members must show they were affected by a common policy, plan, pattern or practice to meet the similarly situated requirement." *Hamm v. Acadia Healthcare Co., Inc.*, 2022 WL 2713532, at *2 (*citing Loy v. Rehab Synergies, L.L.C.*, 2021 WL 3931926, at *8 (S.D. Tex. 2021)). "The key consideration is that to be similarly situated, there must be substantial allegations that potential members were together the victims of a single decision, policy, or plan." *Hamm*, 2022 WL 2713532, at *2 (internal citation omitted). Here, the proposed Collective members need to show they were all subject to a

common alleged unlawful practice giving rise to their claims, <u>which they were.</u>

The evidence submitted and described above demonstrates that Plaintiff and all Hostlers in Texas were subject to the same alleged unlawful policy. The only material dispute between the parties is whether the Hostlers are in fact exempt under the Motor Carrier Exemption.  Other courts who have considered FLSA notice and certification for similar groups of employees routinely grant such motions, both post-*Swales* and pre-*Swales*.  *See Thomas v. Quikrete Companies, LLC*, 2024 WL 5454657 (W.D. Tex. Dec. 3, 2024) (post-*Swales* granting Notice for collective of drivers who were not paid overtime compensation, and holding that the defendant-employer's asserted Motor Carrier Act exemption can be litigated and decided on a collective basis);  *Johnson v. Lazer Spot, Inc.*, 2024 WL 227799 (N.D. Ga. January 19, 2024) (granting Notice for collective of yard spotters paid straight time for overtime and rejecting defendant-employer's argument that "varied factual scenarios related to the qualifications for the motor carrier exemption" make certification and notice inappropriate); *Saenz v. Old Dominion Freight Line, Inc.*, 2019 WL 6622840, *4 (N.D. Ga. June 7, 2019) (granting FLSA notice to collective of hostler/yard jockeys/switcher, finding that they "seek relief for the same alleged FLSA violation (i.e., that they were not exempt from FLSA overtime requirements, were paid on an hourly basis, but were not paid overtime for hours worked up to sixty hours per week when they worked more than forty hours per week)"); *Clemons v. PHB, Inc., et al.,* 2018 WL 4539116 (N.D. Tex. Sept. 21, 2018) (certifying collective of yard hostler employees where defendant-employer universally applied the Motor Carrier Exemption to such

employees); and *Clugston v. Shamrock Cartage & Spotting Servs.*, 2014 WL 5502455 (S.D. Ind. Oct. 30, 2014) (granting FLSA notice to collective of hourly paid Spotters, rejecting virtually identical Motor Carrier Exemption arguments to those anticipated here).

**C.     The Court Should Authorize the Proposed Notice**

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann–La Roche Inc.*, 493 U.S. at 170. Court-authorized notice prevents "misleading communications" and assures the dissemination of accurate information. *Id.* at 172.

**1.     Plaintiffs' Proposed Notice is Timely, Accurate, and Informative**

Plaintiff requests that the Court approve the proposed Notice and Consent to Join Form attached at Exhibit 1. Plaintiff's proposed Court-approved notice to the Putative Collective Members is "timely, accurate, and informative," as required. *Id.* at 172. In a neutral manner, the Notice informs the Putative Collective Members of their right to opt-in to this litigation, advises that this Court has yet to decide the merits of the dispute, and further advises that Defendant cannot retaliate against them for asserting their rights under the FLSA.

**2.     Plaintiff's Proposed Notice and Consent Forms Should be Sent Via First Collective Mail, E-Mail, and Text Message**

Plaintiff proposes distributing the Notice and Consent forms via First Collective Mail, e-mail, and text message to all putative Collective members. "Courts in this district, including this court, regularly allow notice by both mail and e-

14

mail because "e-mail is not the wave of the future; e-mail is the wave of the last decade and a half." *Thrower v. UniversalPegasus, Int'l Inc.*, 484 F. Supp. 3d 473, 489 (S.D. Tex. 2020) (quoting *Rodriguez v. Stage 3 Separation, LLC*, 2015 U.S. Dist. LEXIS 188200, at *6 n.1 (W.D. Tex. 2015) (quotation cleaned up)). Additionally, recognizing that our e-mail inboxes are now "inundated with hundreds or thousands of messages" and that it is not uncommon for individuals to "create a new e-mail account every couple of years, just to wipe the slate clean and rid themselves of the dread associated with sifting through hundreds of e-mails," courts have authorized text message notice in addition to mail and e-mail notice because "potential plaintiffs are more likely to receive notice of the collective action if a court allows text-message notice." *Id.* at 490.

Plaintiff's counsel will oversee the dissemination of such Court-approved notice and pay the up-front charges. Plaintiff's counsel also requests that it be permitted to retain a third-party administration company to assist in the notice process if Plaintiff's counsel deems it necessary and appropriate. All Putative Collective Members interested in joining this lawsuit would be required to return their respective consent form to Plaintiff's counsel for filing with this Court within sixty (60) days[10] of the initial dissemination of the Notice and Consent forms.

Plaintiff further requests that Putative Collective Members have the option to

---

[10] In the Fifth Circuit, sixty (60) days is the "default" notice period. *See Santinac v. Worldwide Lab. Support of Illinois, Inc.*, 107 F. Supp. 3d 610, 619 (S.D. Miss. 2015) (citing *McCloud v. McClinton Energy Grp., L.L.C.*, 2015 WL 737024, at *10 (W.D. Tex. Feb. 20, 2015) (collecting cases)).

execute their consent forms online through an electronic signature service. This service allows Putative Collective Members to sign their consent forms electronically by clicking on a link in an encrypted e-mail designated only for that user, which in turn allows the user to review the document, indicate the user read and understood the consent form, and type additional information. Users are instantaneously provided with a PDF copy of the form, and a copy is accessible to Plaintiff's counsel who will, in turn, file the same with the Court. Importantly, this would merely be an additional option for signing the consent form.

Courts in this circuit have previously authorized the use of electronic signatures in FLSA collective action cases noting that (1) the FLSA does not contain a signature requirement (only that consent be in writing), *Wingo v. Martin Transp., Inc.*, 2018 WL 6334312, at *13 (E.D. Tex. Dec. 5, 2018) (citing *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517 (W.D. Tex. 2015)); (2) the Electronic Signatures in Global and National Commerce Act ("E-Sign Act") of 2000 permits electronic signatures "with respect to any transaction in or affecting interstate or foreign commerce," *Wingo*, 2018 WL 6334312, at *13 (citing 15 U.S.C. § 7001(a)(1); *see also Dyson*, 308 F.R.D. at 517); and (3) "we live in a time when all manner of commercial transactions are routinely cemented by electronic submission," *Wingo*, 2018 WL 6334312, at *13 (citing *Dyson*, 308 F.R.D. at 517 (collecting cases)). Accordingly, this Court should authorize the use of electronic signatures here.

### 3. The Notice and Consent Forms Should be Posted at Defendant's Facilities in Dallas and Houston.

Plaintiff also requests that the Notice and Consent forms be posted in plain

view at Defendant's facilities in Dallas and Houston, near the time clock which Hostlers typically use. Courts in the Fifth Circuit have required that employers post the notice at a conspicuous location in their facilities. *See Mendoza v. AFO Boss, LLC,* 402 F. Supp. 3d 355, 361 (W.D. Tex. 2019) (ordering that within three (3) days of posting the notices at their places of work, defendant shall certify in writing that the notices have been posted and the locations of the postings); *Hobbs v. Cable Mktg. & Installation of Louisiana, Inc.*, 290 F. Supp. 3d 589, 598 (E.D. La. 2018); *Kidwell v. Ruby IV, LLC*, 2019 WL 219850, at *8 (E.D. La. Jan. 16, 2019).

### 4.    Production of the Last Four Digits of Social Security Numbers

Plaintiff also proposes that Defendant provide Plaintiff's counsel the last four digits of the social security number of any Putative Collective Member for whom the mailed notice is returned as undeliverable by the United States Postal Service. The last four digits are needed to obtain current contact information for the Putative Collective Members and are routinely produced by an employer for purposes of the notice process. *See In re Wells Fargo Wage & Hour Emp't Practices Litig. (No. III)*, 2013 WL 2180014, at *3 (S.D. Tex. May 17, 2013) (ordering defendant to produce social security numbers of putative Collective members in which the claims administrator was unable to locate alternate addresses by less intrusive means). Again, the type of information would *only* be produced for *just* those putative Collective members whose notice forms are returned as undeliverable in order to attempt to track down an accurate address for notice for the Hostler.

### 5.    Reminder Notices Should be Sent to Collective Members

In addition to the initial notice by regular mail, e-mail and text message, Plaintiff requests permission to send a follow-up reminder notice via regular mail, e-mail and text message thirty (30) days after the initial notice is sent to those who have not opted into the case. Sending a reminder notice with a consent form helps to further the FLSA's broad remedial purposes by ensuring that all persons who are interested in joining the collective action do so within the prescribed time-period. *See Wingo*, 2018 WL 6334312, *11 (finding that a reminder notice is a reasonable way to ensure that potential Collective members receive notice and, if they choose to do so, file a timely opt-in form); *Page v. Crescent Directional Drilling, L.P.*, 2015 WL 12660425, at *4 (W.D. Tex. Dec. 10, 2015) (same); *Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670, 673 (S.D. Tex. 2020) (same). Likewise, here, the reminder notice further ensures the Putative Collective Members learn about their right to opt-in to the lawsuit and is well within this Court's discretionary authority. *See id.*

### 6. Courts Routinely Require the Production of Personal Contact Information for the Notice Process

Plaintiff requests that the Court order Defendant to provide the names, last known mailing addresses, all known e-mail addresses, and phone numbers, and dates of employment for all Putative Collective Members. Production of a mailing list and contact information for the Putative Collective Members is a necessary (and routine) component of the notice process in collective actions. *See Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 525 (N.D. Tex. 2014). All of the requested information is necessary to allow Plaintiff sufficient information to confirm current addresses and/or locate those Putative Collective Members who may have moved. Moreover, the

production of all known e-mail addresses and telephone numbers is particularly important because (as noted above) such contact information typically does not change when a person moves, and e-mail and text-message notice is an efficient and convenient form of communication.

## **CONCLUSION**

Based on the pleadings, briefing, and supporting documentary evidence, Plaintiff has affirmatively demonstrated that he and the Putative Collective Members are similarly situated and Court-approved notice should be sent to "All Hostlers employed by Defendant in the state of Texas at any time from September 24, 2022 to present, who were classified as exempt under the FLSA under the Motor Carrier Exemption." To facilitate the purpose of the collective action provisions, Plaintiff respectfully requests that the Court grant this Motion, enter the Proposed Order attached as Exhibit 13, and grant the following relief to Plaintiff:

(1)    Certify this case as a collective action and permit notice to issue;

(2)    Order Defendant to produce to Plaintiff's counsel within fourteen (14) days of the granting of this Motion, in a computer-readable format, the contact information (including the names, addresses, telephone numbers, e-mail addresses, and dates of employment with corresponding locations of employment) for each Putative Collective Member;

(3)    Approve the form and content of Plaintiff's proposed judicial notice;

(4)    Order that judicially-approved notice be sent to all Putative Collective Members via First Collective Mail, e-mail, and text-message, and allow the hiring of a third-party administration company, for use at Plaintiff's discretion;

(5)    Authorize the Putative Collective Members to execute their consent forms electronically;

(6)    Authorize a 60-day notice period for the Putative Collective Members to join the case;

(7)    Authorize a 30-day reminder notice;

(8)    Require the production of the last four digits of any Putative Collective Members' social security number whose notice comes back as undeliverable; and

(9)    For any such other relief as this Court deems just and proper.

Dated: November 18, 2025                Respectfully submitted,


**/s/ C. RYAN MORGAN**
C. Ryan Morgan, Esquire
Florida Bar No. 0015527
Morgan & Morgan, P.A.
20 N. Orange Ave, 15th Floor Orlando, FL 32801
T: (407) 420-1414
F: (407) 245-3401
E: RMorgan@forthepeople.com

**/s/ Andrew Frisch**
Andrew Frisch, Esquire
Florida Bar #: 027777
MORGAN & MORGAN, P.A.
8151 Peters Road, 4th Floor.
Plantation, FL 33324
T: (954) 327-5355
F: (954) 327-3013
E: AFrisch@forthepeople.com

**/s/ Matthew R. McCarley**
Matthew R. McCarley, Esq.
TX Bar No. 24041426
FORESTER HAYNIE PLLC
400 N. St. Paul Street Suite 700
Dallas, Texas 75201
T: (214) 210-2100
F: (469) 399-1070
E: mccarley@foresterhaynie.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via email transmission to: Amanda L. Cottrell, Esquire, Sheppard, Mullin, Richter & Hampton, LLP, Four Embarcadero Center, 17th Floor, San Francisco, California 94111; email acottrell@sheppardmullin.com and Paul S. Cowie, Esquire, John D. Ellis, Esquire & Nina Montazeri, Esquire, Sheppard, Mullin, Richter & Hampton, LLP, Four Embarcadero Center,17th Floor, San Francisco, California 94111; email: pcowie@sheppardmullin.com,                    jellis@sheppardmullin.com                    & nmontazeri@shepardmullin.com, this 18th day of November, 2025, *Attorneys for Defendant*

/s/ C. RYAN MORGAN
C. Ryan Morgan, Esquire