IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALEXANDER CONSTANTINE, individually and on behalf of all others similarly situated, § § § § § § | |
| Plaintiff, § | |
| V. § | No. 3:24-cv-2925-K |
| § | |
| AAA COOPER TRANSPORTATION, § § § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

In this putative collective action under the Fair Labor Standards Act ("FLSA"), Plaintiff Alexander Constantine, individually and on behalf of all others similarly situated ("Plaintiffs") filed an Expedited Motion for Protective Order and Other Relief [Dkt. No. 47] (the "MPO") that United States District Judge Ed Kinkeade then referred to the undersigned United States magistrate judge for hearing, if necessary, and determination or recommendation, *see* Dkt. No. 48; 28 U.S.C. § 636(b).

Previewing their motion, Plaintiffs explain that, without their knowledge or the Court's permission, Defendant AAA Cooper Transportation ("ACT" or "Defendant")

> has directly contacted putative collective action members about the substance of this lawsuit and attempted to settle their [FLSA] claims through unauthorized, coercive and misleading "Settlement and Release of Claims" forms without approval of the Court or Plaintiffs' counsel. Specifically, on or about November 10, 2025, while Plaintiff's Motion for FLSA Certification and Notice to Putative Collective Action Members [Dkt. No. 30] was already pending before the Court, Defendant directly and impermissibly contacted and solicited members of the putative class to sign an agreement purporting to waive their rights under the FLSA,

> settle any and all claims arising from this lawsuit, and prevent them from exercising their legal rights to participate in this FLSA action.

Dkt. No. 47 at 1-2; *see* Dkt. No. 47-1 (Cover Letter and Settlement Agreement and Release of Claims sent to putative class member Giovanni Lewis).

Through their MPO, Plaintiffs seek an order "(1) declaring any Agreements obtained by Defendant to be null and void; (2) prohibiting Defendant from soliciting additional Agreements or otherwise communicating with putative class members regarding the lawsuit and any of the issues raised by this action; (3) requiring Defendant to immediately provide to Plaintiff's counsel a copy of all Agreements and other written communications with Mr. Lewis and putative class members regarding the issues in this lawsuit; (4) permitting a corrective notice to be issued to notify putative class members that any Agreements signed by them are null and void and do not affect their right to participate in this action or to seek any and all unpaid wages and other damages; and (5) awarding Plaintiffs their reasonable attorneys' fees and costs associated with this motion." Dkt. No. 47 at 3-4.

ACT filed an expedited response, Plaintiffs filed an expedited reply, and the Court conducted oral argument on the MPO on January 8, 2026. *See* Dkt. Nos. 49-53.

The undersigned has authority to enter a nondispositive order granting attorneys' fees or other nondispositive sanctions or denying a request for what might be considered a dispositive sanction. *See* 28 U.S.C. § 636(b); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. Unit A 1981) (per curiam); *Siegel v. Compass Bank*, No. 3:18-cv-1023-X, 2021 WL 4498914, at *1 (N.D. Tex. Jan. 11, 2021); *Green Hills Dev. Co., LLC v. Credit Union Liquidity Servs., LLC*, No. 3:11-cv-

1885-L-BN, Dkt. No. 373 at 2 (N.D. Tex. Dec. 1, 2016) (following *Brown v. Bridges*, No. 3:12-cv-4947-P, 2015 WL 410062, at *1-*4 (N.D. Tex. Jan. 30, 2015)).

Under this authority and for the reasons explained below, the Court grants in part and denies in part the MPO.

## Legal Standards

"Courts have broad authority to govern the conduct of counsel and parties in FLSA collective actions … because FLSA cases present significant opportunities for abuse, most often in the form of improper communications that undermine the collective action process." *Williams v. Sake Hibachi Sushi & Bar, Inc.*, No. 3:18-cv-517-D, 2018 WL 4539114, at *2 (N.D. Tex. Sept. 21, 2018) (cleaned up).

This is so even "before the court conditionally certifies a collective action or authorizes a notification pursuant to [29 U.S.C. §] 216(b)" because "[d]istrict courts, as part of their managerial responsibility, have 'a substantial interest in communications that are mailed for single actions involving multiple parties' and have discretion whether to implement the section 216(b) notice procedure to facilitate a court-authorized notice." *Vogt v. Tex. Instruments Inc.*, No. 3:05-cv-2244-L, 2006 WL 4660133, at *3 (N.D. Tex. Aug. 8, 2006) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989), then citing *id.* at 169).

And it's correct that "court-authorized notification is discretionary, and potential class members are not included as party plaintiffs in the collective action unless they affirmatively opt-in, [and, so,] courts should not *per se* prohibit precertification communications." *Id.*

Even so, "because [precertification] communications manifest the potential for abuse, and courts have both the duty and broad authority to exercise control over collective actions and to enter appropriate orders governing the conduct of counsel and parties, courts should regulate such communications pursuant to their managerial responsibility." *Id.* (cleaned up).

"The court, for example, has the power to regulate communications between a party and absent class members that are 'misleading, coercive, or an attempt to undermine the collective action,' although the court's discretion in this respect is not unlimited." *Williams*, 2018 WL 4539114, at *2 (cleaned up).

"In fact, communications that are litigation-neutral need not be restricted, and no communications restrictions should be made without a specific record showing by the moving party of the particular abuses by which it is threatened." *Id.* (cleaned up).

And, so, "[i]n the Fifth Circuit, district courts have applied a two-part test for determining whether to issue an order impacting a party's speech with absent class members":

- "First, the court determines whether there is a need for a restriction on speech by evaluating whether the party's speech is 'misleading, coercive, or an attempt to undermine the collective action.'"
- "Second, if such a need exists, the court then tailor[s] appropriate injunctions and sanctions in light of First Amendment concerns."

*Id.* (cleaned up).

## Analysis

To start, because Plaintiffs moves for a protective order, the Court construes the referred motion as brought under Federal Rule of Civil Procedure 26(c).

The Court next finds unpersuasive ACT's attempt to distinguish this case because the Court has yet to certify a collective, and, so, "[b]ecause a collective has not been certified and opt-in notice has not been approved, the posture here is analogous to a precertification putative [Federal Rule of Civil Procedure] 23 class action, where courts routinely hold that individual settlement offers are lawful and permitted." Dkt. No. 50 at 10-12.

For example, this FLSA action is similarly postured to *Plunkett*, where the court, "following *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021), authorized preliminary discovery necessary to determine whether to certify a collective action and issue notice to potential plaintiffs, with a deadline of July 17, 2024 to complete pre-notice discovery and a briefing schedule for [plaintiffs'] Motion for FLSA Certification and Notice that require[d] Plaintiffs to file their motion by September 6, 2024," and where, "[a] little over a month into this preliminary discovery period, [the plaintiffs] filed [a similar] Emergency Motion for Protective Order and Other Relief." *Plunkett v. FirstKey Homes LLC*, No. 3:23-cv-2684-L-BN, 2024 WL 2331745, at *1-*2 (N.D. Tex. May 22, 2024).

And ACT resolved another preliminary matter at oral argument by backing off its assertion that the MPO should be denied because the letter to Mr. Lewis as attached to the MPO should not be considered competent evidence. *See* Dkt. No. 50 at 7. And ACT has not denied that it sent this letter to Mr. Lewis nor that it may be one of many such letters.

So the Court has examined that letter to determine whether it counts as speech

that is misleading, coercive, or an attempt to undermine the collective action.

It qualifies as misleading considering *Williams* at least because it fails "to provide sufficient information regarding damages," 2018 WL 4539114, at *3, as Plaintiffs argue in the MPO, *see, e.g.*, Dkt. No. 47 at 2-3.

The Court further finds that the letter is misleading considering the information that is missing from it.

For example, it informed Mr. Lewis (and presumably others) that "[t]his lawsuit asserts a single claim for unpaid overtime on behalf of a putative collective of hostlers employed by ACT in Texas." Dkt. No. 47-1 at 2. But, like the failure to provide sufficient information regarding damages, this skeletal description of the claims at issue does not provide a sufficient disclosure of what putative collective members may be giving up by releasing their claims.

And, while ACT included in the letter that the complaint in this lawsuit could be obtained from the "HR Manager" – and, so, it's likely that a putative collective member, if they took this step, could then learn Plaintiffs' counsel's contact information – Plaintiffs would presumably argue that the human resources office is also the entity they claim is violating the FLSA.

The letter then described the lawsuit as "likely [to] be disruptive to the business," a statement that does not seem to be litigation-neutral.

So, in sum, the Court finds that the communication raises enough concerns for the Court to conclude that an order should issue and will next consider the appropriate injunctions and sanctions that should be ordered.

First, the Court will not, at least at this time, declare agreements obtained by ACT "null and void," as Plaintiffs urge, where the Court does not have before it evidence that any former or current employee signed such an agreement. *Accord Plunkett*, 2024 WL 2331745, at \*8 ("Plaintiffs urge the Court to void any signed Voluntary Statement and Acknowledgement that any former or current employee signed. But no current plaintiff did so, and the Court has no evidence before it that any other current or former employees want to have their own signed Voluntary Statement and Acknowledgement voided." (citing *Williams*, 2018 WL 4539114, at \*5)).

Nor will the Court, at least at this time, authorize a corrective notice. *See id.* at \*9 ("Plaintiffs also urge the Court to authorize issuance of a corrective notice. But whether this case can proceed as a collective action under Section 216(b) and, if so, what the class or classes of similarly situated members would be is not yet resolved. The Court will instead consider the appropriateness of a curative notice if and when the Court determines that, consistent with *Swales*, notice to potential opt-in plaintiffs should issue." (citing *Ross v. Wolf Fire Prot., Inc.*, 799 F. Supp. 2d 518, 527 (D. Md. 2011))).

But the Court will impose what it determines to be the appropriate remedies here by:

- entering a protective order mandating that ACT cannot have direct contact with potential opt-in plaintiffs regarding the substance of this case or prior payments (or nonpayment) of overtime or send any settlement agreements or releases or waivers of FLSA claims or any communications like the Cover Letter and Settlement Agreement and Release of Claims sent to Mr. Lewis at issue here [Dkt. No. 47-1];

- ordering that ACT must, by **February 3, 2026**, turn over to Plaintiffs' counsel copies of the attachments to any signed Settlement Agreement and Release of Claims that is sent to its current or former hostlers as well as copies of any unsigned Settlement Agreement and Release of Claims that ACT sent out to its current or hostlers; and

- ordering under Federal Rule of Civil Procedure 26(c)(3) that ACT and its counsel of record in this case (or their law firm) are required to pay, jointly and severally, the reasonable attorneys' fees and costs incurred for Plaintiffs' counsel to draft and file their Expedited Motion for Protective Order and Other Relief [Dkt. No. 47] and reply and appendices [Dkt. No. 51] in support.

## Conclusion

The Court GRANTS IN PART and DENIES IN PART Plaintiffs' Expedited Motion for Protective Order and Other Relief [Dkt. No. 47] as set out above.

And, so, the Court directs Plaintiffs' counsel and ACT's counsel to confer by telephone or videoconference or in person about the reasonable amount of the attorneys' fees and costs to be awarded, as specified above.

By no later than **February 3, 2026**, the parties must file a joint report notifying the Court of the results of the conference. If all disputed issues as to the amount of attorneys' fees and costs to be awarded to Plaintiffs have been resolved, Plaintiffs' counsel must also send an agreed proposed order to the Court at Horan_Orders@txnd.uscourts.gov by **February 3, 2026**.

If the parties do not reach an agreement as to the amount of attorneys' fees and costs to be awarded, Plaintiffs' counsel must, by no later than **February 3, 2026**, file an application for attorneys' fees and costs that is accompanied by supporting evidence establishing the amount of the reasonable attorneys' fees (as described above) to be awarded. The fee application must be supported by documentation

evidencing the "lodestar" calculation, including affidavits and detailed billing records, and citations to relevant authorities and must set forth the itemized number of hours expended in connection with the recoverable attorneys' fees described above as well as the reasonable rate(s) requested. *See Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002).

If Plaintiffs files an application, ACT must file a response by **February 24, 2026**, and Plaintiffs must file any reply by **March 11, 2026**.

SO ORDERED.

DATED: January 19, 2026

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE