IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALEXANDER CONSTANTINE, on behalf of himself and those similarly situated, | § | |
| | § | |
| Plaintiff, | § | Civil No. 3:24-CV-02925-K |
| | § | |
| v. | § | |
| | § | |
| AAA COOPER TRANSPORTATION, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Alexander Constantine's Motion for FLSA Certification and Notice to Putative Class Members (Doc. No. 30) and Brief in Support (Doc. No. 31) (together, the "Motion to Certify"). Defendant AAA Cooper Transportation filed its Response (Doc. No. 32) and Appendix in Support (Doc. No. 33) (together, the "Response"). Plaintiff filed a Reply Brief in Support (Doc. No. 37) (the "Reply"). The Court has carefully considered the Motion to Certify, the Response, the Reply, the applicable law, and any relevant portions of the record. Based on the totality of the evidence, the Court finds that Plaintiff demonstrates he and the other Hostlers employed by Defendant in Texas (the "Texas Hostlers") are similarly situated and the merits question can be answered on a collective basis; therefore, the Court **GRANTS** Plaintiff's Motion to Certify as to certifying this collective and approving

the issuance of notice. However, as to the contents and manner of the notice, the Court orders Plaintiff and Defendant to confer as explained in detail in Section III.B.

## I. Background

All page citations herein are to the CM/ECF assigned page number. Plaintiff Alexander Constantine brings this suit against Defendant AAA Cooper Transportation on behalf of himself and others similarly situated for unpaid overtime wages, claiming Defendant mis-classified them as exempt employees. *See, e.g.*, Doc. No. 1 at 1. Defendant is a "less than truckload" commercial motor carrier that transports customers' freight. Doc. No. 32 at 8; *see* Doc. No. 31 at 4; Doc. No. 1 at 2. Plaintiff and the others he seeks to include are (or were) employed by Defendant as Hostlers at Defendant's Texas-based service center yards in Dallas (Grand Prairie) or Houston (together, the "Texas Yards"). Doc. No. 31 at 4; Doc. No. 32 at 8. (Because this case is limited to Hostlers working in the Texas Yards, the Court does not refer to any allegations or arguments regarding Defendant's practices nationwide. *See* Doc. No. 31 at 4 n.2.)

Defendant pays all Texas Hostlers an hourly rate and uniformly classifies them as exempt under the Motor Carrier Act Exemption (the "MCA Exemption"), 29 U.S.C. § 213(b)(1), to the overtime requirements of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 216(b). Doc. No. 31 at 5; *see* Doc. No. 31-2 at 29–30, 35–36. According to Plaintiff, he and the other Texas Hostlers regularly worked more than 40 hours per week, "frequently working as many, or more than 50–55 hours per week."

Doc. No. 1 at 3. Prior to 2024, Texas Hostlers were paid straight time for all hours worked; meaning if they worked more than 40 hours per week, they would be paid at their hourly rate for any overtime. Doc. No. 31 at 5; *see* Doc. No. 31-2 at 71. Beginning in 2024, Defendant began paying Texas Hostlers time and one-half for all hours worked above 50 hours per week. Doc. No. 31 at 5–6; *see* Doc. No. 31-2 at 71.

In bringing this suit on behalf of himself and those similarly situated, Plaintiff asserts that he and the other Texas Hostlers are not exempt employees under the MCA Exemption and, therefore, Defendant violated the FLSA in failing to pay Plaintiff and the Texas Hostlers time and one-half their hourly rate for all overtime hours above 40 hours worked per week.

## II. Legal Standard

An employee may sue his employer under the FLSA "for and on behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Similarly situated employees can join such a "collective action" only by affirmatively opting into it. *Id.* To facilitate the collective action, the court may authorize a party to send notice of the proceeding to the group, or "collective," of potential plaintiffs. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–71 (1989). This approval of notice sometimes goes by the name "certification." Since the parties use this term, the Court adopts it for purposes of determining this Motion to Certify. Unlike class certification under Rule 23 of the Federal Rules of Civil Procedure, certification under the FLSA "does not

produce a class with an independent legal status, or join additional parties to the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

Before allowing a collective action to proceed, the court "must rigorously scrutinize the realm of 'similarly situated' workers," determine that the proposed notice of the action "will go to those who are actually similar to the named plaintiffs," and ensure that the notice does not "signal approval of the merits" of the collective action "or otherwise stir up litigation." *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021). The named plaintiff has the burden of establishing that members of his proposed collective are similarly situated. *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336 (5th Cir. 2023).

Courts have "broad, litigation-management discretion" in determining whether putative collective action members are similarly situated." *Swales*, 985 F.3d at 442. "To decide whether a group of employees is similarly situated, the district court must consider whether merits questions can be answered collectively." *Loy*, 71 F.4th at 336 (citation and internal quotation marks omitted). "Considering, early in the case, whether merits questions can be answered collectively has nothing to do with endorsing the merits." *Swales*, 985 F.3d at 442. Although threshold issues material to certification must be resolved, a court does not resolve other merits issues that remain after it has found that the putative collective members are or are not similarly situated. *See id.* at 441–42; *T.S. v. Burke Found.*, 521 F. Supp. 3d 691, 698 (W.D. Tex. 2021).

## III. Analysis

Plaintiff moves to certify the following collective:

> All Hostlers employed by Defendant in the state of Texas at any time from September 24, 2022 to present, who were classified as exempt under the FLSA under the Motor Carrier Exemption.

Doc. No. 31 at 1. The Court first examines whether the Texas Hostlers, that is Plaintiff and the putative collective members, are similarly situated such that the merits question can be determined on a collective basis. Finding that the Texas Hostlers are sufficiently similar, the Court then determines whether notice to this collective is proper.

### A. Similarly Situated

The "merits question" in this suit is whether Defendant properly classified the Texas Hostlers as exempt under the MCA Exemption and, therefore, was not required to pay them for any overtime worked. *See Swales*, 985 F.3d at 441 (court must "identify . . . what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated'"). Plaintiff must, therefore, show that "he and members of the Proposed Collective are similarly not exempt from FLSA-protection." *Rosales v. Indus. Sales & Servs., LLC*, 2021 WL 4480747, at *9 (S.D. Tex. Sept. 30, 2021).

The FLSA requires an employer to pay nonexempt employees time and one-half for all overtime hours worked. 29 U.S.C. § 207(a). Known as the Motor Carrier Act exemption, the FLSA does not apply to "any employee with respect to whom the

Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49[.]" *Id.* § 213(b)(1). The MCA exemption applies only to employees "whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (i) As that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate and foreign commerce." *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 577 n.4 (5th Cir. 2018) (quoting 29 C.F.R. § 782.2(b)(2)).

In conducting the similarly situated analysis, the Court considers whether the merits question can be answered collectively. *Cf. Loy*, 71 F.4th at 336–37 ("While *Swales* rejected *Lusardi*'s two-step method of 'conditional certification' and notice followed by a motion to decertify, courts may still find it useful to consider the *Lusardi* factors to help inform or guide the similarly situated analysis given the similarities between *Swales* and *Lusardi*'s second step."); *but cf. id.* at 337 ("That said, use of these factors is not mandatory, as there is no one-size-fits-all analysis or mechanical test to apply").

1. Factual and Employment Settings

Courts consider the putative collective members' "job duties, geographic location, supervision, and salary to determine if [they] are similarly situated." *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 739 (W.D. Tex. 2018); *see Rosales*, 2021 WL 4480747, at *9 ("[I]n showing that a proposed collective is similarly covered

by the FLSA's overtime-pay protections, it is critical for a plaintiff to demonstrate that members of the proposed collective perform similar job duties entitling them to such protection."). Those considerations are particularly relevant in cases, such as this, where the plaintiff is challenging whether the putative collective members were properly exempted from the FLSA's overtime protections. This is so because exemptions "from the FLSA's overtime-pay protections [are] based on the job duties he or she performs." *Rosales*, 2021 WL 4480747, at *9. "The presence of a common policy, plan, or practice affecting all putative class members, although not required, can be helpful in assessing [this] factor." *Torres v. Chambers Protective Servs., Inc.*, Civ. Action No. No. 5:20-CV-212-H, 2021 WL 3419705, at *5 (N.D. Tex. Aug. 5, 2021)(Hendrix, J.) (quoting *Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 721 (S.D. Tex. 2014)).

In claiming the Texas Hostlers perform similar job duties entitling them to FLSA protection, Plaintiff contends that: Texas Hostlers perform their primary job duties in the service center yard, such as moving trailers within the yard; the Texas Hostler position is a distinct position from that of a "dockworker" with each one having a unique job code in Defendant's system; Defendant has a job posting for the "hostler" position, which lists the primary job duties of that position, and a separate posting for the "dockworker" position, which specifies the (different) primary duties of that job; a "dockworker" is primarily responsible for loading and unloading trailers and freight at the docks and for planning the same; before March 2025, the Texas Hostlers did not

perform dock work, such as loading or unloading trailers, as part of their Hostler job duties; beginning March 2025 (after this lawsuit was filed), Defendant informed all Texas Hostlers that they would be required to perform at least one hour of dock work each week; the Texas Hostlers do not drive on public roads or highways as part of their job duties; the Hostlers in Dallas and in Houston perform "basically the same" job duties; the Texas Hostlers use the same work assignment system in both Texas Yards; the Texas Hostlers "all go through the same training;" the Texas Hostlers are subject to a "uniform pay practice" by Defendant; Defendant uniformly classifies Texas Hostlers as exempt from the FLSA under the MCA Exemption; and Defendant has uniformly failed to pay the Texas Hostlers for all the overtime hours worked at the proper rate. In support of this, Plaintiff submits his deposition testimony, the Aronhalt Deposition, Defendant's Supplemental Responses to Interrogatories, Defendant's job description for Texas Hostlers, a job posting for Texas Hostler position, various of Plaintiff's paystubs, Defendant's notification to employees of change to overtime pay policy, Defendant's job description for "Dockworker", a "Dockworker" paystub, and the Declaration of Derrick London, another Texas Hostler. *See* Doc. Nos. 31-2, 31-3, 31-4, 31-5, 31-6, 31-7, 31-8, 31-9, 31-10, 31-11, 31-12 & 37-1.

In his deposition, Mr. Aronhalt, Defendant's Rule 30(b)(6) witness, confirms that: Defendant has "a single uniform job description and job posting" for a Texas Hostler; a Hostler is someone who moves "the trailers from and to the dock, or within the yard environment at a location;" the Texas yards are self-contained areas with no

public roads within them or connecting them; the Hostlers in Dallas and in Houston perform “basically the same” job duties; Defendant pays the Texas Hostlers an hourly rate and classifies all Texas Hostlers as exempt from the FLSA pursuant to the MCA Exemption. *See, e.g.*, Doc. No. 31-2 at 21–22, 25, 29–30, 35–36, 40–41,

“Evidence of a similar job description coupled with allegations that revolve around the same aspect of the job is sufficient to find that putative collective action members are similarly situated.” *Aghatise v. Royal Guards Sol. LLC*, 2025 WL 964226, at *3 (E.D. Tex. Mar. 31, 2025)(Mazzant, J.). Courts usually consider whether the plaintiff and the putative collective members had similar job requirements and similar pay provisions. *Id.* (citing *Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, 2022 WL 2119542, at *8 (E.D. Tex. June 13, 2022)). Courts also look to whether the plaintiff “established a factual nexus that binds the class members’ claims together such that hearing the claims in one proceeding is fair to all parties and does not result in an unmanageable trial of individualized inquiries.” *Aghatise*, 2025 WL 964226, at *3 (quoting *Garcia-Alvarez*, 2022 WL 2119542, at *8).

The totality of the evidence establishes that Plaintiff and the putative collective members are similarly situated in their factual and employment settings such that the Court can decide on a collective basis whether the Texas Hostlers were non-exempt employees entitled to overtime pay. *See, e.g.*, Doc. No. 31-2 at 21–22, 27–30; Doc. No. 31-4; Doc. No. 31-5.

Defendant's arguments to the contrary do not persuade the Court. First, Defendant argues that the applicability of the MCA exemption must be addressed at this stage because it either bars the FLSA from applying at all or precludes a finding that Plaintiff and the putative collective members are similarly situated. The Court disagrees that this is a threshold issue that must be resolved at this stage. *See Swales*, 985 F.3d at 441. Unlike in *Swales* and *JP Morgan*, there is no evidence that the FLSA does not apply to the Texas Hostlers altogether, nor is there evidence that the Texas Hostlers are barred from bringing this suit. *See id.* (concluding the district court improperly ignored evidence that the plaintiffs were "valid independent-contractor[s]" rather than employees, thereby barring application of the FLSA to the plaintiffs altogether); *In re JP Morgan Chase & Co.*, 916 F.3d 494, 502, 504 (5th Cir. 2019) (holding it was improper for the district court to refuse to consider evidence that the employees had signed arbitration agreements barring them from bringing a lawsuit, which meant the employees were not "potential participants"). And the Court finds no merit in Defendant's argument that a finding of "similarly situated" is precluded merely because the issue in this case involves an exemption to the FLSA. At least one court in this District faced with a similar merits question—"whether Defendant properly classified Appraisers as exempt and thus appropriately denied them overtime payment"—conducted the similarly situated analysis and concluded the putative collective was similarly situated. *Bittan v. BBG, Inc.*, Civ. Action No. 3:25-CV-2839-S, 2026 WL 2876078, at *2–4 (N.D. Tex. Sept. 24, 2026)(Scholer, J.). The question for

the Court is whether the exemption issue can be decided on a collective basis, rather than "devolv[ing] into a cacophony of individual actions." *Swales*, 985 F.3d at 442.

Defendant also contends that Plaintiff provides no evidence outside of his own testimony that Texas Hostlers have similar job duties and "Plaintiff cannot meet his burden from his own testimony alone." Doc. No. 32 at 18 (citing *Rosales*, 2021 WL 4480747, at *10). But the *Rosales* case Defendant cites does not stand for the broad proposition that a plaintiff's testimony is alone insufficient. In *Rosales*, the court concluded that Rosales failed to meet his "similarly situated" burden because Rosales in his declaration described only his job duties, saying nothing about the job duties of any other proposed collective members, and he presented no other evidence on that point. *Rosales*, 2021 WL 4480747, at *10. Here, Plaintiff is not relying solely on his deposition testimony, which does in fact address the job duties of other Texas Hostlers; Plaintiff also cites the Court to Mr. Aronhalt's deposition, the declaration of Derrick London, another Texas Hostler, and several other materials, including Defendant's records. *See generally* Doc. Nos. 31-2–31-12, 37-1. At least two other district courts in the Fifth Circuit recently found that a plaintiff's declaration and the defendant's records were sufficient to establish the plaintiff and the putative collective members were similarly situated. *See Massey v. Dorsa Family Dentistry PLLC*, 2026 WL 2972137, at *3 (S.D. Tex. Aug. 21, 2026) (finding the plaintiff satisfied her burden to demonstrate similarity with her declaration and the defendants' records); *Aghatise*,

2025 WL 964226, at *4 (finding that the plaintiff's declaration and the defendant's records "alone [were] sufficient" to establish similarity).

Next, Defendant argues that their own written job description for a Texas Hostler is insufficient evidence that they are similarly situated because Plaintiff failed to show that the putative collective members "are similarly situated in what they actually do day-to-day and what [Defendant] expected of them." Doc. No. 32 at 18–19. Differences or variations in the "day-to-day" duties of the employees do not cut against a finding of "similarly situated" when the totality of the evidence supports such a finding. *See, e.g.*, *Segovia v. Fuelco Energy, LLC*, 2021 WL 2187956, at *9 (W.D. Tex. May 28, 2021); *see also Cortez v. Casa do Brasil, LLC*, 646 F. Supp. 3d 847, 853 (S.D. Tex. 2022) ("Class members do not have to hold identical employment to be similarly situated."). "[T]he question is not whether Plaintiffs all have the same exact work day, but rather whether they are all subjected to a common policy, plan, or practice—the same factual and employment settings." *Segovia*, 2021 WL 2187956, at *9 (quoting *Serrano v. Republic Servs., Inc.*, 2017 WL 2531918, at *19 (S.D. Tex. June 12, 2019)) (internal quotations omitted). Here, Defendant allegedly applied one policy, which was uniformly categorizing all Texas Hostlers as exempt under the MCA Exemption thereby paying them straight time for any overtime worked. This argument is not persuasive.

Defendant asserts that the Texas Hostlers had "loading responsibilities or duties," which "affect[s] the safe operation of motor vehicles on public roads" and,

therefore, qualifies them for the MCA Exemption. Doc. No. 32 at 19–22. The Court already concluded that determining the applicability of the MCA Exemption is not a threshold issue that must be decided at this stage. Whether the Texas Hostlers qualify for the MCA Exemption to the FLSA's protections can and will be decided collectively. And this issue is wholly in dispute based on Plaintiff's evidence to the contrary. "[C]ourts in the Fifth Circuit agree that the similarly situated determination is not an opportunity for courts to assess the merits of the claim by deciding factual disputes or making credibility determinations." *Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, 2022 WL 2119542, at *5 (E.D. Tex. June 13, 2022) (collecting cases). The fact remains that, according to Defendant's own evidence, whether the Texas Hostlers are/were required to perform loading duties as part of their job is an issue that applies to all Texas Hostlers uniformly and, as such, can be decided collectively. *See, e.g.*, Doc. No. 33 at 117–18, ¶¶7–8.

Defendant also asserts that some Texas Hostlers have "driving duties" requiring them to drive on public streets and highways, which makes them exempt under the MCA Exemption and therefore dissimilar in their job duties. Doc. No. 32 at 22–23. Again, the Court already concluded that determining the applicability of the MCA Exemption is not a threshold issue that must be decided at this stage. Even so, a review of Defendant's evidence in support quickly undercuts its assertion. Defendant cites to its Compendium of Evidence #16 "Fact" that "[s]ome employees in Texas who were *formerly* classified by [Defendant] as hostler are *now* classified as drivers, but continue

to regularly perform hostler work in the yard." Doc. No. 32-1 at 5 (emphasis added). But these individuals confirm in their declarations that they drive in their position as a "*driver*" (e.g., linehaul, pickup and delivery), not as a Hostler. *See id.* That these individuals, who are employed as "drivers," may also perform some "hostler work" does not put them within the definition of this proposed collective and certainly does not preclude the Court from finding the putative collective is similarly situated.

The Court views Defendant's responsive arguments as a misguided attempt to litigate the merits of Plaintiff's claims. The Court is tasked with deciding whether the similarities among the Texas Hostlers justify a collective proceeding, not whether they have valid claims. *See Swales*, 985 F.3d at 434 (emphasizing "the Supreme Court's admonishment that while a district court may facilitate notice to potential plaintiffs for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation") (cleaned up) (citing *Hoffman-La Roche*, 493 U.S. at 169).

At this stage, Plaintiff "need only provide evidence to establish 'some factual nexus which binds [him and the putative collective members] as alleged victims of a particular policy or practice.'" *Gomez v. Global Precision Sys., LLC*, 2026 WL 2138573, at *9 (W.D. Tex. July 24, 2026). Considering all the evidence, Plaintiff has shown a factual nexus binding him and the putative collective members as alleged victims of Defendant's policy or practice of mis-classifying Texas Hostlers as exempt employees and failing to pay them for overtime hours worked at the proper rate.

For all these reasons, the Court concludes that the Texas Hostlers are sufficiently similar in job duties and pay scheme.

2. Defenses Available to Defendant

As analyzed above, the Court can address on a collective basis whether the Texas Hostlers were properly classified under the MCA Exemption to the FLSA's protections. Defendant does not identify any other defenses it might assert that would be individual to any potential plaintiff. This weighs in favor of finding sufficient similarity.

3. Fairness and Procedural Considerations

Finally, in considering fairness and procedure, courts look to "the primary objectives of the FLSA §216(b) collective action: (1) to lower costs to the plaintiffs through the pooling of resources, and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity." *Snivley*, 314 F. Supp. 3d at 743; *see also Francis-Luster v. Kelley Law Firm, P.C.*, 2022 WL 822468, at *4 (N.D. Tex. Feb. 10, 2022) (Toliver, M.J.) ("Courts also consider whether the case can be coherently managed in a manner that will not prejudice any party."), *accepted by*, 2022 WL 575566 (N.D. Tex. Feb. 25, 2022)(Lindsay, J.).

The Court can find on this record that permitting the putative plaintiffs to proceed collectively would allow them to pool their resources thereby reducing their costs. It would also allow the Court to efficiently resolve the common issues of fact and law arising from Defendant's classification of the Texas Hostlers as exempt

employees. Defendant has not shown that it will be prejudiced or otherwise burdened by allowing this matter to proceed as a collective action. *Id.* Therefore, this factor weighs in favor of a "similarly situated" finding.

4. Conclusion

At this stage, the Court asks "only whether the merits of the proposed collective's case can be decided collectively—not whether a plaintiff will ultimately prevail in proving all the elements of the alleged FLSA violation." *Aghatise*, 2025 WL 964226, at *5 (internal quotations and citation omitted). The Court is not tasked with "assess[ing] the merits of the claim by deciding factual disputes or making credibility determinations." *Garcia-Alvarez*, 2022 WL 2119542, at *5.

Based on the totality of the evidence, the Court finds sufficient similarities in the Texas Hostlers' factual and employment settings, a lack of individualized defenses, and fairness and procedure favor a collective action. Exercising its "broad, litigation-management discretion," the Court concludes that the Texas Hostlers are similarly situated. The Court can decide on a collective basis the merits question of whether Defendant properly classified the Texas Hostlers as exempt employees under the MCA Exemption to the FLSA and, therefore, was not required to pay them for overtime worked.

**B. Notice**

Having found Plaintiff and the putative plaintiffs are similarly situated, the Court must now authorize the sending of notice to the putative collective members.

*See Francis-Luster*, 2022 WL 822468, at *5. The Court has broad discretion in determining the content of the notice and the method of distribution. *Id.* (internal citation omitted). Plaintiff proposes specific Notice and Consent to Join Form for the Court to approve, asks to post the Notice and Consent to Join Form and to deliver them via certain modes of distribution, and requests certain contact and personal information of putative collective members be provided by Defendant. In response, Defendant argues that Plaintiff's counsel should not control the notice and opt-in process, objects to the production of certain sensitive information directly to Plaintiff's counsel, and objects to the proposed Notice and Consent to Join Form.

Having reviewed the parties' arguments on this point, the Court determines that the most efficient process is for the parties to meet and confer regarding the contents and manner of notice and consent forms to be issued, the method(s) for delivering the same, and the contact and personal information of the putative plaintiffs that is necessary and to whom that information will be provided. **Within 45 days of this Order being entered**, the parties shall meet and confer on the notice issues and shall file a JOINT report that addresses those issues and includes as an attachment a proposed agreed notice and consent form. If the parties cannot agree, they shall file a joint report addressing their respective positions and including as attachments separate proposals for the notice and consent form by the same deadline.

## IV. Conclusion

The Court **GRANTS** Plaintiff's Motion for FLSA Certification and Notice to Putative Class Members (Doc. No. 30) as to certifying this collective and authorizing the issuance of notice. The parties shall meet and confer regarding notice and shall file a JOINT report as described above **within 45 days of this Order being entered**.

**SO ORDERED.**

Signed November 18th, 2026.

Ed Kinkeade

ED KINKEADE
UNITED STATES DISTRICT JUDGE